**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| CHASE LAMB,<br>*on behalf of himself and*<br>*others similarly situated*,<br><br>            Plaintiff,<br><br>v.<br><br>MORTGAGE ONE FUNDING, LLC<br><br>            Defendant. | )<br>)Civil Action No.: 2:26-cv-10450<br>)<br>)     Class Action Complaint<br>)<br>)     Jury Trial Demanded<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

Defendant's Motion to Dismiss asks this Court to ignore well-pleaded factual allegations and instead impose a heightened pleading standard that is inconsistent with Rule 8 and binding precedent. Plaintiff's Complaint alleges that Defendant placed multiple telemarketing calls and a text message to Plaintiff's cellular telephone number after it had been registered on the National Do Not Call Registry, that Defendant's agents identified themselves during those calls, and that Plaintiff did not provide consent. These allegations, taken as true, easily satisfy the plausibility standard required to survive a motion to dismiss.

Rather than engage with these allegations, Defendant attempts to reframe factual disputes as pleading deficiencies. But Rule 12(b)(6) does not permit the Court to weigh competing factual narratives or require evidentiary proof at the outset of litigation. Because Plaintiff has plausibly alleged violations of the Telephone Consumer Protection Act, Defendant's Motion should be denied in its entirety.

## BACKGROUND

Plaintiff's telephone number has been registered on the National Do Not Call Registry since June 12, 2023. ECF No. 1 ¶ 21. ¶ Despite this registration, Defendant placed at least four calls and one text message to Plaintiff between September 3 and September 17, 2025. ECF No. 1 ¶ 22. ¶ These communications

1

were made for the purpose of advertising and marketing Defendant's refinancing and debt consolidation services. ECF No. 1 ¶ 23. ¶ During the calls, Defendant's agents identified themselves as calling from Mortgage One Funding. ECF No. 1 ¶ 24. ¶ Plaintiff spoke with an agent named Jacob, who advertised Defendant's services, and Plaintiff subsequently received a follow-up text message identifying the sender as "Jacob from Mortgage One Funding." ECF No. 1 ¶¶ 25–27. ¶ Plaintiff did not provide prior express consent or permission to receive these communications and did not request information from Defendant. ECF No. 1 ¶¶ 30–31.

## ARGUMENT

**I.  PLAINTIFF HAS ADEQUATELY ALLEGED MULTIPLE TELEPHONE SOLICITATIONS FROM THE DEFENDANT, INCLUDING A TEXT MESSAGE WHICH IS A "CALL" UNDER THE TCPA.**

Defendant argues that Plaintiff failed to allege more than one actionable telephone solicitation. This argument ignores the plain language of the Complaint. Plaintiff alleges that Defendant made at least four calls and one text message within a short, defined time period. The allegations are below:

- Plaintiff received at least four calls and one text message from Defendant from September 3 to September 17, 2025.
- The calls were made for the purpose of advertising and marketing Defendant's refinancing and debt consolidation services.
- During the calls Defendant's agents identified themselves as calling from Mortgage One Funding.
- On one of the calls on September 12, 2025, Plaintiff spoke with agent

Jacob.
- Jacob advertised Defendant's products and services.
- Subsequent to the call, Plaintiff received a text message from Defendant that stated, "Jacob from Mortgage One Funding."
- The purpose of the subject calls was to advertise and market Defendant's business or services.

*See* ECF No. 1 at ¶ 22-29.

These allegations are specific, concrete, and sufficient to plausibly allege multiple contacts. At the pleading stage, Plaintiff is not required to provide a transcript of each call or detail every word spoken. Rather, Plaintiff must allege facts that allow a reasonable inference that the calls were solicitations. Plaintiff has done so and this is more than enough to warrant that the parties continue to discovery. *See e.g. Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation."). Indeed, courts have found in TCPA cases that using the same caller identification number on multiple generic telemarketing calls is sufficient to allege direct liability against a defendant. For example, in *Bird v. Pro Star Builders, Inc.,*

3

No. 2:22-cv-03610-JLS-JEM, 2022 U.S. Dist. LEXIS 215155, at *7-8 (C.D. Cal. Nov. 28, 2022), which itself cited to other similar decisions, the court held:

> Further, it is reasonable to infer that Pro Star was responsible for the alleged February 24 unanswered call from the same number as the second call on April 19. Indeed, courts in other districts have recently found that a plaintiff has sufficiently alleged multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once. *See, e.g., Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 2022 U.S. Dist. LEXIS 138916, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022) (finding that plaintiff plausibly pleaded that four calls—including three unanswered calls—had come from the same defendant because they had originated from the same number and the plaintiff alleged that other individuals had complained about receiving solicitations from that number)…The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two calls at issue came from Pro Star.

*Accord Kemen v. Cincinnati Bell Telephone Company*, No. 1:22-cv-00152-DRC, *Order granting leave to amend the complaint* (ECF 17) (May 24, 2023) ("As for the two unanswered calls, Kemen has plausibly alleged Cincinnati Bell placed them for a telemarketing purpose too. To start, unanswered calls can 'count' for TCPA purposes. … And the allegations here give rise to a plausible inference that Cincinnati Bell placed the two unanswered calls for a telemarketing reason."). Defendant's attempt to isolate one call and disregard the remaining alleged contacts improperly fragments the Complaint. When the allegations are considered as a whole, they clearly support the inference that more than one solicitation occurred.

Finally, acknowledging that the Plaintiff has pled multiple contacts, the Defendant attempts to assert that a text message is not a telephone call for purposes of the TCPA. This argument has been routinely rejected around the country.

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25

Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin., LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the

6

word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any

communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954)).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And, absent contrary evidence, a statutory word or phrase is presumed

8

to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA.  The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[1] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

---

[1] *See, e.g.*, Paging Network, Inc., *Annual Report*, 8 (1991), https://perma.cc/W6UW-UEM2 (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Warciak*, 949 F.3d at 356 ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."). For example, the Ninth Circuit recently revisited the "statutory construction" question "under de novo review." *Howard*, 164 F.4th at 1123–24. And the Circuit confirmed its prior holding that a "'text message' constitutes a 'call' within the meaning of the TCPA," without granting any deference to the FCC. *Id.* ("[I]t is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference."). The Seventh Circuit's reading also has not changed. *See Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (taking as a given that texts can be actionable "telephone solicitations" under section 227(c)).

So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9.  In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*,

2025 WL 2856295, at *3.  The statute's structure independently confirms this plain-meaning reading.

Indeed, reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with

certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be "transmitted." *See, e.g.*, *Transmit*, *Random House Webster's College Dictionary* (1991) ("to send a signal by radio waves or by wire"). And the reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[2] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not

---

[2] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *Loper Bright*, 603 U.S. at 395. As a number of district court have held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Skopos*, 2025 WL 2029274, at *4; *see Mey* v *Liberty Home Guard, LLC*, 2026 US Dist LEXIS 739, at *15, *19 (explaining section 227(c) "expressly delegated rulemaking authority" such that even "[u]nder *Loper Bright*," the FCC's interpretation is entitled to "deferential review"). So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of the statute. *See McLaughlin Chiropractic*

13

*Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025).

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.* at 395; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals.

14

*Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's

"delegated authority" to make Do Not Call List rules). It follows that, if the statute

doesn't resolve this question, Congress expected that the FCC would.

It is no surprise then that the majority of courts have concluded that under the

TCPA text messages are calls.[3] This Court should hold the same.

---

[3] *See Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *13 (D. Conn. Mar. 31, 2026) (holding the word "call, in th[e § 227(c)] context, means to 'get or try to get into communication' using a telephone. A text message is sent using a cellular telephone to 'get or try to get into communication' with another person"); *Rubin v. Staples, Inc.*, No. 2:2545515 (WJM), 2026 U.S. Dist. LEXIS 70359, at *17 (D.N.J. Mar. 31, 2026) ("[T]he Court concludes that "telephone call" can encompass text messages for purposes of § 227(c)(5)"); *Rabbitt v. Rohrman Midwest Motors*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *8 (N.D. Ill. Mar. 27, 2026) ("Based on the court's independent examination of the TCPA, it agrees with the FCC that § 227(c)(5) applies to text messages."); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026) ("The structure of the entire TCPA leads to the conclusion that §227(c) does include text messages."); *McGonigle v. Teleflora LLC*, No. 1:25-cv-807, ECF 66 (E.D. Va. Mar. 13, 2026) (denying motion to dismiss premised on DNCR not encompassing text message calls); *McGonigle v. Shopperschoice.Com*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026) ("The Court finds that [] 227(c)(5) applies to cellphone text messages."); *Hernandez v. Bedford Dental*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208, at *3 (N.D. Ill. Feb. 4, 2026) ("[The court] declines to hold that the TCPA does not apply to text messages."); *Alvarez v. Fiesta Nissan*, 2026 U.S. Dist. LEXIS 14155, at *10 (S.D. Tex. Jan. 26, 2026) ("[P]lain-language reading suggests that to send a text message is to 'try to get or to get into communication by telephone"); *Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026) ("[I]nterpreting § 227(c) to include text messages is consistent with numerous district court decisions."); *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025) ("The [DNCR] statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of such solicitations."); *Dilanyan v. Hugo Boss Fashions*, No. 2:25-CV-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *8 (C.D. Cal. Dec. 3, 2025) (concluding "a text message is a 'call'" under § 227(c)); *McGonigle v. Office Depot*, No. 25-80069, 2025 U.S. Dist. LEXIS 231061, at *6 (S.D. Fla. Nov. 25, 2025) ("[A] text message is a call for the purpose of the TCPA"); *Esquivel v. Mona Lee*, No. 3:25-cv-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841, at *8 (S.D. Cal. Nov. 24, 2025) (denying motion to dismiss finding § 227(c) applies to text messages); *Mujahid v. Newity*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (DNCR provision applies to text message calls); *Evers v. CampaignSidekick, LLC*, No. 24 CV 11067, 2025 U.S. Dist. LEXIS 201112, at *9 (N.D. Ill. Oct. 10, 2025) ("[A] text message is also a 'call' for the purpose of Evers's claim under § 227(c)(5)"); *Wilson v. MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, at *9 (N.D. Cal. Oct. 7, 2025) ("[N]othing in the text, structure, or

## II.  PLAINTIFF HAS PLAUSIBLY ALLEGED THAT DEFENDANT MADE THE CALLS

Defendant contends that Plaintiff failed to plausibly allege that Defendant made the calls. This argument is contradicted by the Complaint's factual allegations. Plaintiff alleges that during the calls, Defendant's agents identified themselves as calling from Mortgage One Funding. Plaintiff further alleges that he received a follow-up text message explicitly identifying the sender as "Jacob from Mortgage One Funding." These allegations directly connect the communications to Defendant.

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls with sufficient specificity to give rise to the inference of direct liability. He has done so because he has pled facts which sufficiently prove at the pleadings stage that Defendant directly placed the calls complained of.

In essence, Defendant adopts the classic "we didn't do it" defense by

purpose of the TCPA suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp.*, No. 25-CV-22336, 2025 U.S. Dist. LEXIS 183986, at *12 (S.D. Fla. Sep. 18, 2025) ("[A] text message constitutes a 'call' under the TCPA"); *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025) ("A telephone solicitation can be a call or text message."); *Wilson v. Skopos Fin.*, No. 6:25-CV-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *12 (D. Or. July 21, 2025) ("[U]nsolicited text messages invade the privacy and disturb the solitude of their recipients" and are "within the purview of the DNC Registry's protections."); *Wilson v. Hard Eight Nutrition*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025) (applying DNCR provision to text messages); *Hudson v. Palm Beach Tan*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *16-17 (M.D.N.C. Aug. 12, 2024) ("[T]he statutory text … support[s] the conclusion that text messages can establish the basis for a claim under § 227(c)(5).").

disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. But Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendant placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that Defendant placed the illegal calls at issue here.

Direct TCPA liability attaches to an entity that "initiates" the call, that is, the entity that either takes the necessary steps to physically place it or is "so involved in" the placement that it essentially made the call itself. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). Taking the well-pleaded facts as true, as the Complaint's allegations make clear, and unlike in *Dobronski v. Juliasangel Mktg., LLC,* the Plaintiff has pled more than adequate facts to allow this Court to determine that the Defendant directly placed the calls complained of at the pleadings stage. In *Juliasangel Mktg., LLC*, the Plaintiff relied on a single

17

interaction that was *not initiated by the defendants*. 2025 U.S. Dist. LEXIS 182595 at *25 (E.D. Mi.). In contrast, Plaintiff here alleges that Defendant initiated multiple calls to his cellular telephone number, that Defendant's agents identified themselves as calling from Mortgage One Funding during those calls, and that Plaintiff received a follow-up text message expressly identifying the sender as "Mortgage One Funding." These are concrete, call-specific allegations based on Plaintiff's personal experience, not conclusory assertions or attenuated inferences.

To that end, the Mr. Dobronski's loss in *Russo* is contrasted with his victory in *Dobronski v. CHW Grp.*, 2025 WL 2426370, at *3-*4, where the defendant filed a nearly *identical* Rule 12(b)(6) motion on nearly identical premises and citing nearly identical authority. In denying Defendant's motion, Judge Parker explained how the Plaintiff there, like here, adequately alleged a case for direct liability against the Defendant, including by providing "additional details" about the calls that were absent from the Plaintiff's pleading in *Juliasangel Mktg., LLC*:

> Plaintiff does allege a supporting fact: that in all calls aside from Call 5, the callers identified themselves as "with" or "from" Choice Home Warranty. Defendant qualifies this fact as insufficient, citing non-binding cases where courts found a telemarketer's indication of "association with" an entity during a call with a plaintiff insufficient to show that the entity actually made the call. Defendant also faults Plaintiff for not providing enough factual matter to establish that the calls came from a number belonging to Defendant. . . . This Court finds that Plaintiff alleges sufficient facts to plausibly claim Defendant's liability for the subject calls. . . . If a caller's self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA. Facts alleged in a complaint need

18

not be detailed, and a plaintiff need not prove his case at this stage. . . . Indeed, some facts, such as Defendant's control over the phone numbers used to call Plaintiff, may be revealed only through discovery. Requiring plaintiffs to plead such facts initially would impede the right to recovery under the TCPA.

This Court should apply the same reasoning as did Judge Parker did recently. Like in *CHW Grp.*, the Plaintiff has pled sufficient factual allegations connecting the Defendant to the calls at issue.

These facts as pled are just like those that this very Court has held as sufficient in *CHW Grp.* for a holding of direct liability and this Court has not been the only one to realize that such allegations are sufficient at the pleadings stage to give rise to the inference of direct liability, either. These are precisely the kind of connect-the-dots pleading allegations that courts find sufficient to infer direct initiation at the pleading stage.

For example, in *VanderSloot v. Charles Baratta LLC*, the Eastern District of New York considered a similar motion in which the defendant claimed that the Plaintiff insufficiently connected "at least 69 calls" to the Defendant, based on a complicated web of connections that the Court used a chart in order to decipher, including the use of multiple telephone numbers and, as here, ultimately an email from an individual with an email at the Defendant's email address. *VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929, at *2 (E.D.N.Y. July 9, 2025). In *VanderSloot*, the court held that the plaintiff in the

sufficiently "connect[ed] the dots." *Id.* at *6. In so holding, the Court pointed to similarly specific record evidence connecting the calls at issue and the entities that placed them to the defendants. In doing so, the Court held that those allegations and connections "effectively connect[ed] the dots between the phone numbers and "fictitious" individuals and how they trace back to Defendant Prime." *Id.* at *8.

As another Court has explained, the Plaintiff is entitled to take Defendant at their word:

> After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in fact, 'Erica ... from [the Defendant]'?

*Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025). And, as *this* Court explained in *CHW Grp.*, some of the information Defendant faults Plaintiff for not pleading, such as the ownership of spoofed numbers and use of them in the calling conduct, are within the Defendant's sole knowledge. 2025 WL 2426370, at *4 ("[S]ome facts, such as Defendant's control over the phone numbers used to call Plaintiff, may be revealed only through discovery."). Furthermore, in *Delgado v. Emortgage Funding, LLC*, the plaintiff alleged telemarketing calls where "the caller solicited mortgage services[.]" No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, at *8 (E.D. Mich. Oct. 13, 2021). There, the Court concluded that plaintiff "sufficiently alleged that . . . defendant or its agent(s) initiated telephone

20

solicitations[.]" *Id.* at \*12. This Court should hold the same, just as Judge Parker did.

The Plaintiff has more than adequately pled a case for direct liability.

## III.   PLAINTIFF'S LACK OF CONSENT IS ADEQUATELY PLED, BUT IT IS NOT REQUIRED AS IT IS AN AFFIRMATIVE DEFENSE.

Defendant argues that Plaintiff's allegation of lack of consent is conclusory.

This argument fails because Plaintiff expressly alleges that he did not provide prior

express consent or permission to receive calls from Defendant and that he did not

request information or promotional materials. *See* ECF No. 1 at ¶ 30-31.

Defendant's suggestion that a single conversation, that is *itself the illegal contact*,

somehow negates Plaintiff's lack of consent is misplaced.

More importantly for purposes of resolving a motion to dismiss, the Plaintiff

is under no obligation to plead the absence of the Defendant's affirmative defense

of consent. As Judge Behm held last year in denying a TCPA case:

> Defendant argues that Plaintiff fails to allege that the messages were sent without prior express consent. However, consent is an affirmative defense that a plaintiff is not required to plead to assert a TCPA claim. *See Dahdah v. Rocket Mortg., LLC*, 2024 U.S. Dist. LEXIS 174732, 2024 WL 4299564, at \*6 (E.D. Mich. Sept. 26, 2024) (citing *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1145-46 (W.D. Mo. 2020) (prior express invitation or permission is an affirmative defense); *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 591 (M.D. Tenn. 2018) (prior express consent is an affirmative defense to liability under the TCPA)…Accordingly, this is not a proper basis for the court to find that the amended complaint fails to state a claim.

*Smith v. Equrra, LLC,* 2025 U.S. Dist. LEXIS 203745, \*7-8 (E.D. Mi. 2025). This Court should hold the same.

## IV.   PLAINTIFF HAS SUFFICIENTLY ALLEGED WILLFUL OR KNOWING CONDUCT

Defendant next challenges Plaintiff's allegations regarding willful or knowing conduct.  The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." The Defendant claims that Plaintiff's allegations of such damages are conclusory. However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally. In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was violating the statute. *See, e.g.,* *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (holding that knowing violation requires only that defendant know of the facts constituting the offense); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013). Here, Plaintiff alleges that Defendant knew or should have known that Plaintiff's number was on the National Do Not Call Registry and nonetheless placed multiple telemarketing calls to the Plaintiff. *See* ECF No. 1 at ¶ 34. This is certainly sufficient to entitle the Plaintiff to discovery. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS (JCx), 2014 WL 3101426, at \*1, 4

(C.D. Cal. July 7, 2014) (holding wrong number automated calls was sufficient to state a claim for treble damages)*; Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding an allegation that plaintiff never provided his information to the defendant sufficient to state a claim for treble damages); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015) (finding allegations that "defendant, using an ADTS [sic], sent text message to plaintiff in knowing and/or willful violation of the TCPA" sufficient to state a claim for treble damages). Whether Defendant's conduct ultimately meets the standard for enhanced damages is a question for a later stage of the litigation. At the pleading stage, Plaintiff is only required to allege facts supporting a plausible inference of such conduct, which he has done.

## V.    PLAINTIFF'S CLASS ALLEGATIONS SHOULD NOT BE STRUCK PRIOR TO DISCOVERY.

Defendant seeks to dismiss or strike Plaintiff's class allegations. This request is premature and unfounded. As an initial matter, Defendant's argument that Plaintiff cannot represent the class is based on the same flawed premise underlying its other arguments. Because Plaintiff has adequately alleged that he received multiple telemarketing calls, he falls squarely within the proposed class definition.

Second, Plaintiff also alleges that Defendant engaged in a common course of conduct by placing telemarketing calls to individuals whose numbers were

23

registered on the National Do Not Call Registry. Plaintiff further alleges that class members can be identified through Defendant's records and that common questions predominate. These allegations are sufficient at the pleading stage.

Courts are clear that a "motion to strike plaintiff's class allegations . . . is premature." *Emortgage Funding*, 2021 U.S. Dist. LEXIS 196785, at *13 (denying motion to strike class allegations). And while plaintiffs "must meet Rule 23's various requirements in order to be certified, the parties have yet to reach this stage in the litigation." *Id*. At the pleading stage, courts simply "lack[] the information necessary to conduct a rigorous analysis under Rule 23." *Id*. Thus, the "court should defer decision on certification pending discovery[.]" *Nichols v. Accretive Capital LLC*, No. 23-10473, 2023 U.S. Dist. LEXIS 197111, at *10 (E.D. Mich. Nov. 2, 2023) (quoting *In re Am. Med. Sys*., 75 F.3d 1069, 1086 (6th Cir. 1996)).

Indeed, only several months ago Judge Ludington denied a substantively identical motion in another TCPA case, *Hubble v. LoanDepot.Com, LLC*, 2025 U.S. Dist. LEXIS 186864 (E.D. Mi. September 23, 2025), holding "pre-discovery motions to strike class allegations are disfavored. Such motions are granted only in the narrow circumstance where it is impossible to certify the defined class, regardless of what facts might emerge in discovery." *Id.* at *5. Judge Ludington explained that in TCPA cases, "factual development could alter the certification analysis, which counsels heavily against striking

Plaintiff's class allegations at the pleading stage." *Id.* at *9.

Like *Emortgage Funding and LoanDepot*, granting Defendant's motion to strike class allegations—before the parties engage in discovery—would be "premature." 2021 U.S. Dist. LEXIS 196785, at *13. After all, Courts recognize that TCPA class actions readily satisfy the requirements of Rule 23. *See, e.g., Kimble v. First Am. Home Warranty Corp. & Fivestrata LLC*, No. 23-10037, 2024 U.S. Dist. LEXIS 118951, at *10, 29 (E.D. Mich. July 8, 2024) (granting final approval and noting that "courts frequently find that TCPA actions raise common issues for class consideration").

Relatedly, Defendant misstates the appropriate remedy. "[W]hen impermissible class allegations are stricken at this early stage in the litigation, plaintiffs should be given leave to amend their complaint to proceed." *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015). Even if the class was failsafe (and it is not), the appropriate remedy is to identify the issue and rectify the class definition through amendment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety and permit this case to proceed to discovery.

Dated: April 14, 2026        PLAINTIFF, on behalf of himself
and others similarly situated,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

26